UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
JOHN DOE,

                      Plaintiff,

       -against-

GRINDR, LLC; KL GRINDR HOLDINGS, INC.,
GRINDR HOLDING COMPANY, and
AARON WEINREB,

                    Defendants.
---------------------------------------------------------X

Civil Action No.

Plaintiff Demands
A Trial by Jury


**COMPLAINT**

    Plaintiff "JOHN DOE" (referred to herein as "Plaintiff" and/or "JOHN DOE"), by his attorney, DEREK SMITH LAW GROUP, PLLC, hereby complains of the Defendant GRINDR, LLC, Defendant KL GRINDR HOLDINGS, INC., Defendant GRINDR HOLDING COMPANY (collectively referred to herein as "GRINDR") and Defendant AARON WEINREB (referred to herein as "WEINREB")(Collectively referred to as "Defendants"), upon information and belief, as follows:


## NATURE OF THE CASE

1. Defendant GRINDR knowingly facilitates and contributes to sexual abuse, rape and trafficking of minor children for profit.

2. From approximately May 2019 through October 2019, Defendant WEINREB, a 48-year-old obstetrician-gynecologist, used the geosocial networking and online dating application, "Grindr", to meet, solicit and entice minors to engage in oral and anal sex. Knowing his victims

were underage, the Defendant WEINREB successfully enticed two minors to engage in sex with him on multiple occasions.[1] Plaintiff John Doe is one of those minors.[2]

3.   This action seeks, *inter alia*, to hold Defendant GRINDR accountable, not for the content of what its users post, but rather, 1) for providing *access* to children to create "Grindr" accounts to then engage in sex with adult men; 2) for violating the Trafficking Victims Protection Act and RICO; 3) for misrepresenting on its website that children do not have the possibility of using their online sex platform; and 4) for failing to warn the public and its users that its sex platform is frequently used by underage boys who are victims of sexual predators they meet on GRINDR.

4.   Plaintiff complains pursuant to 18 U.S. Code § 1591 Sex trafficking of children or by force, fraud, or coercion ("Section 1591"), The Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. §§ 1961(3) and 1962(c), The New York State Executive Law, and the New York City Human Rights Law, New York City Administrative Code § 8-502(a), et. seq. ("NYCHRL"), New York Common Law, and seeks damages to redress the injuries Plaintiff has suffered as a result of being sexually abused and sexually assaulted.

## JURISDICTION AND VENUE

5.   Jurisdiction of this action is conferred upon the court as this action involves a Federal Question under Section 1591 as well as RICO. The Court also has supplemental jurisdiction over the State and City Causes of Action.

6.   GRINDR extensively and intentionally markets to New York residents, including Plaintiff.

7.   The Grindr mobile app was downloaded in the State of New York.

8.   GRINDR sent data to and from New York within its internet platform.

---

[1] See U.S. District Attorney's 1/14/20 Letter filed in U.S.D.C./EDNY Criminal case 1:20-cr-00006-BMC
[2] Plaintiff John Doe recently turned 18 and is no longer a minor.

9.  GRINDR services and supports hundreds of thousands of accounts in New York.

10. Venue is proper in this district based upon Defendants' residency and that a substantial part of the events or omissions giving rise to the claim occurred within the County of Kings, State of New York, within the Eastern District of New York. 28 U.S.C. §1391(b).

## PARTIES

11. Plaintiff JOHN DOE is a male who at all times relevant was under the age of 18.

12. Defendant Grindr, LLC is a Limited Liability Company organized in the State of California with its principal place of business in West Hollywood, California.

13. Upon information and belief Grindr, LLC has two corporate members: KL Grindr Holdings Inc. and Grindr Holding Company.

14. Defendant KL Grindr Holdings, Inc., is, upon information and belief, incorporated under the laws of Delaware with a principal place of business in China.

15. Defendant Grindr Holding Company is, upon information and belief, incorporated under the laws of Delaware and has its principal place of business in California.

16. The above defendants are collectively referred to herein as "GRINDR."

17. Defendant AARON WEINREB is a male residing in the State of New York, County of Kings.

## FACTS

18. "Grindr" is a website and also a smartphone application designed and used to facilitate sex between men.

19. As stated in The Southern California Interdisciplinary Law Journal article, "BACK TO THE GRIND: RETHINKING GRINDR'S ACCOUNTABILITY FOR USER CONTENT" by JULIE KVEDAR, "Grindr only legally permits adults to join, but underage users can easily circumvent its age restriction mechanisms, and the app markets indiscriminately towards a young demographic. In creating a Grindr profile, users may encounter just a single notification that the app is for adults only: the requirement of entering one's birth date. As a result of its flimsy age verification process and its indiscriminate marketing, Grindr poses risks to both minors and adults."

20. Defendant GRINDR is not immune from responsibility for allowing male children to sign up for "Grindr" and then be sexually assaulted and statutorily raped.

21. Section 230 of the Communications Decency Act of 1996 (the "CDA"), 47 U.S.C. § 230 provides certain immunity for websites for claims arising from information published by third parties. "The majority of federal circuits have interpreted [§ 230(c) ] to establish **broad federal immunity** to any cause of action that would make service providers liable **for information originating with a third-party user** of the service." Almeida v. Amazon.com, Inc., 456 F.3d 1316, 1321 (11th Cir. 2006) (internal quotation marks omitted). (emphasis added) Herrick v Grindr LLC, 765 Fed Appx 586, 589 [2d Cir 2019], cert denied, 140 S Ct 221, 205 L Ed 2d 135 [2019].

22. Section 230 is inapplicable to these claims. The herein claims against GRINDR are not based on any content or information by third parties. Rather, the claims herein against GRINDR are based on, inter alia, *access*: access by minors to its sex connection platform. The claims herein are also based on failure to warn.

23. The herein claims against GRINDR are also based on its liability under 18 U.S.C. 1591.

24. 18 U.S.C. § 2421A entitled, "Promotion or facilitation of prostitution and reckless disregard of sex trafficking" amends Section 230(e) stating, "(5) NO EFFECT ON SEX TRAFFICKING LAW.—Nothing in this section (other than subsection (c)(2)(A)) shall be construed to impair or limit— "(A) any claim in a civil action brought under section 1595 of title 18, United States Code, if the conduct underlying the claim constitutes a violation of section 1591 of that title."

25. The herein claims against GRINDR are further based on its very own content where it states in its "Terms of Use" that a minor may not use its service. Specifically, GRINDR's website misleads the public stating "NO PERSONS UNDER THE AGE OF EIGHTEEN (18) YEARS (OR TWENTY-ONE (21) YEARS IN PLACES WHERE EIGHTEEN (18) YEARS IS NOT THE AGE OF MAJORITY) MAY DIRECTLY OR INDIRECTLY VIEW, POSSESS OR OTHERWISE USE THE GRINDR SERVICES." https://www.grindr.com/terms-of-service/

26. Definition 1(a) of the word "may" according to Merriam-Webster is "used to indicate *possibility* or probability."[3] Thus, the affirmative statement by GRINDR that no child "may . . . use the Grindr services" is a representation that it is not possible for a child to use the GRINDR services. This is blatantly false since it is certainly possible for a child to use the GRINDR services. A child merely enters in a different birth year to sign up on GRINDR and the world of sex with adult men is instantly open to these children.

27. Parents of minor boys are not alerted to the fact that their boys have the ability to sign up for sex with men on GRINDR. Instead, GRINDR represents to the world that children do not have the possibility of signing up on their website or app. This is not true.

---

[3] https://www.merriam-webster.com/dictionary/may

28.  GRINDR has longstanding actual and constructive knowledge that its website and App are regularly used by underage boys:

"Despite Grindr's Terms and Conditions insisting the contrary, both case law and anecdotal evidence suggest that plenty of Grindr users are younger than eighteen. The only restrictions on underage users creating a Grindr account are entering one's birth date and accepting the Terms & Conditions; both are easily circumvented. Grindr's emphasis on anonymity makes it easy for underage users to go unnoticed. Users are not required to include a picture or list their age in their profile to interact with other users. Grindr may seem like a fun, exciting online platform where young men who are curious about other men can spend time—indeed, for many young men, it likely serves exactly that purpose. However, Grindr poses a number of risks to those underage teens who make their way on to the platform. Indeed, by marketing itself to young MSM without meaningfully blocking users who are under eighteen, Grindr creates a platform that facilitates harm to minors." [4]

29. See also "Men in jail after 13-year-old poses as 18 on Grindr in Layton" June 9, 2015. https://www.qsaltlake.com/news/2015/06/09/men-in-jail-after-13-year-old-poses-as-18-grindr-layton-utah.

30. See also: "More than half of underage gay teens use Grindr to find a community" May 21, 2018 https://www.gaystarnews.com/article/underage-gay-teens-grindr-community/

31. A Northwestern Medicine study (published in the Journal of Adolescent Health) found that more than 50 percent of sexually active gay and bisexual boys ages 14 to 17 use dating (also known as hook-up) apps like "Grindr" (21+) and "Scruff" (18+) to find new friends and boyfriends. [5]

32. Moreover, Defendant GRINDR is aware that underage users sign up for their sex service thereby exposing themselves to the possibility of grown men sexually assaulting and statutorily raping these underage users. ("Grindr does not condone illegal or improper behavior and we are

---

[4] The Southern California Interdisciplinary Law Journal article, "BACK TO THE GRIND: RETHINKING GRINDR'S ACCOUNTABILITY FOR USER CONTENT" by JULIE KVEDAR,
[5] https://www.jahonline.org/article/S1054-139X(18)30008-9/abstract

troubled that an underage person may have been using our app in violation of our terms of service," a GRINDR spokesperson said to the Tribune." [6]

33. According to *The Times* newspaper in 2019, "Detectives have investigated more than 30 incidents of child rape since 2015 where victims evaded age checks on dating apps only to be sexually exploited. One 13-year-old boy on Grindr was raped or abused by at least 21 men. Documents reveal 60 further cases of child sex offences via online dating services, including grooming, kidnapping and violent sexual assault." [7]

34. A recent investigation into Tinder, Bumble, and Grindr showed serious flaws. The investigation, which was launched in January 2020 by Raja Krishnamoorthi, the Chairman of the Subcommittee on Economic and Consumer Policy (USA), found that through enabling underage use, these apps had facilitated 60+ cases of sexual abuse of children and 30 cases of rape of a minor.

35. See also "Man who is accused of raping 12-year-old boy says they met on dating app [Grindr]" August 22, 2017[8]

36. The *GBH News Center for Investigative Reporting* reported, "the app is teeming with underage gay, bisexual and questioning boys, according to researchers, child exploitation specialists and users like Chavez who say they can easily lie about their age to gain access to the service. an investigation by the the GBH News Center for Investigative Reporting finds that too often the adult men they meet are dangerous and the encounters can lead to sexual exploitation, assault and trafficking." ""It creates an easy place for sexual predators to look for these kids," said

---

[6] https://southfloridagaynews.com/National/study-gay-bisexual-teens-use-grindr-to-find-friends-and-relationships.html
[7] https://www.thetimes.co.uk/article/revealed-the-child-victims-of-dating-apps-p3wfv83ml
[8] https://bakersfieldnow.com/news/local/man-accused-of-raping-12-year-old-boy-said-met-on-dating-app

Jack Turban, a fellow in child and adolescent psychiatry at Stanford University School of Medicine. "Grindr is also at fault for knowing that this is happening and not doing anything about it.""[9]

37. The above shows just a sampling of the extensive knowledge GRINDR has from third party sources that its sex platform is used by children who are sexually assaulted by its users. GRINDR fails to warn underage users and their parents that its sex platform is frequently used by pedophiles and other sexual predators to sexually abuse minor children.

38. In Doe v Internet Brands, Inc., 824 F3d 846, 851 [9th Cir 2016], the Court held that 47 U.S.C. § 230 did not protect a website from a failure to warn cause of action.  Just like the plaintiff in Doe v Internet Brands, Inc. Id., plaintiff herein "does not seek to hold [GRINDR] liable as a "publisher or speaker" of content someone posted on the [] website, or for [GRINDR'S] failure to remove content posted on the website." The Court of Appeals in Doe v Internet Brands, Inc., stated, "Jane Doe herself posted her profile, but she does not seek to hold Internet Brands liable for its content." . . .  "Jane Doe does not claim to have been lured by any posting that Internet Brands failed to remove. Internet Brands is also not alleged to have learned of the predators' activity from any monitoring of postings on the website, nor is its failure to monitor postings at issue." Id. Likewise, Plaintiff herein posted his profile, but does not seek to hold GRINDR liable for its content. Moreover, Plaintiff herein does not claim to have been lured by any posting that GRINDR failed to remove. GRINDR is not alleged to have learned of Defendant WEINREB's activity from any monitoring of postings on the app or website. The Court in Doe v Internet Brands, Inc. noted that "Jane Doe attempts to hold Internet Brands liable for failing to warn her about

---

[9] https://www.wgbh.org/news/national-news/2021/07/12/popular-gay-dating-app-grindr-poses-exploitation-risk-to-minors

information it obtained from an outside source about how third parties targeted and lured victims through Model Mayhem." *Id*. Likewise, Plaintiff herein seeks to hold GRINDR liable for failing to warn him about information GRINDR obtained from outside sources how third parties target and lure children victims through the GRINDR platform. This is in addition to GRINDR's improperly providing children with access to its sex platform, also having nothing to do with content that is posted on its platform. This is also in addition to GRINDR misrepresenting to the public that it is not possible for children to use its platform through the misleading use of the word "may" also having nothing to do with content posted by third parties.

39. Defendant WEINREB, ostensibly, initially believed Plaintiff JOHN DOE was over the age of 18 when they met, [10] because GRINDR blatantly allows minors improper access by simply clicking that they are over 18, even if they are not.

40. With respect to improperly providing children with access to GRINDR, there are numerous, easy ways for GRINDR to verify the age of its users all of which they actively choose to disregard instead focusing on profit over safety. For example, www.agechecked.com is one such company that can verify a website user's age. agechecked.com represents, "You can be safe in the knowledge that our sophisticated solution will be able to identify any underage consumers quickly and effectively without hindering the purchase potential of suitable buyers." Another company, GETID, utilizes a "multi-layered verification system [that] prevents underage users from bypassing the system. By requiring all users to verify their identity, underage users will now be subject to Biometric Facial Recognition software and Liveness Detection, as well as having to submit official documentation."

---

[10] See Weinreb's sentencing memo Document #48 1:20-cr-00006-BMC

41. We "card" people at bars to make sure they are old enough to drink. People are "carded" in order to gain access to strip clubs. Why should access to online sex platforms be any different?

42. "Dean Nicolls, VP of global marketing at <u>Jumio</u>, suggests that users should take picture of their government IDs with their smartphone, and dating apps should use identification verification companies to analyse the picture of the ID and determine if it is authentic or if it has been digitally altered. As an extra step, they should request a selfie – just in case the ID was stolen – and compare the person in the picture on the ID. They can then also extract the data of birth from the IDs. According to Dr. Nicolls, "[t]he entire process takes less than one minute and establishes the real identity and age of every user." [11]

43. These simple measures have been taken by numerous companies willing to take responsibility for their platform. By way of example, since 2013, Airbnb has required ID verification whereby users are required to upload a picture of a government issued identification such as a Driver's license, passport, or National identity card.[12] By requiring ID verification, Airbnb can verify that users are who they say they are.

44. Additionally, the social connection website/app, *Yubo,* does, in fact utilize age verification. Yubo utilizes "age scan technology" from the age verification company, Yoti, which uses artificial intelligence and facial recognition software to verify a person's age.[13]

45. Unfortunately, Defendant GRINDR does not and did not take any such verification measures despite knowing that underage children use their sex platform and despite the ease with which age verification can be incorporated into their platform.

---

[11] See www.information-age.com/tinder-grindr-age-verification-technology-123479331.

[12] https://www.igms.com/airbnb-id-verification/ and https://www.airbnb.com/help/article/1237/verifying-your-identity

[13] https://www.information-age.com/tinder-grindr-age-verification-technology-123479331/

46. Defendant GRINDR does not and did not take any such verification measures because they prefer to have underage male subscribers who boost their revenues.

47. "Grindr intentionally makes signing up easy for prospective users, including those who are underage, because having more users benefits the company's bottom line. The more users Grindr has, the higher its profits: 75 percent of its revenue comes from its subscription services, and 25 percent comes from its advertisers.  Both revenue sources ostensibly depend on having a large user population. Interestingly, Grindr announced in August 2018 that it planned to go public. Apparently, it had been courting investors by revealing that it had been 'continuously profitable' for three years based on premium subscriptions. Critics argue that Grindr has an incentive to turn a blind eye to underage users because those additional users increase its profits." [14]

## AS A FIRST CAUSE OF ACTION
## TRAFFICKING VICTIMS' PROTECTION ACT (TVPA)
## (As against all Defendants)

48. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

49. 47 USCA § 230 states, "Nothing in this section (other than subsection (c)(2)(A)) shall be construed to impair or limit--**(A)** any claim in a civil action brought under section 1595 of Title 18, if the conduct underlying the claim constitutes a violation of section 1591 of that title." 47 USCA § 230

50. **§ 1591. Sex trafficking of children or by force, fraud, or coercion states as follows:**

   **(a)** Whoever knowingly--

---

[14] The Southern California Interdisciplinary Law Journal article, "BACK TO THE GRIND: RETHINKING GRINDR'S ACCOUNTABILITY FOR USER CONTENT" by JULIE KVEDAR,

**(1)** in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

**(2)** benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

**(b)** The punishment for an offense under subsection (a) is--

**(1)** if the offense was effected by means of force, threats of force, fraud, or coercion described in subsection (e)(2), or by any combination of such means, or if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained the age of 14 years at the time of such offense, by a fine under this title and imprisonment for any term of years not less than 15 or for life; or

**(2)** if the offense was not so effected, and the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had attained the age of 14 years but had not attained the age of 18 years at the time of such offense, by a fine under this title and imprisonment for not less than 10 years or for life.

**(c)** In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

**(d)** Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section, shall be fined under this title, imprisoned for a term not to exceed 25 years, or both.

**(e)** In this section:

**(1)** The term "abuse or threatened abuse of law or legal process" means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action.

**(2)** The term "coercion" means--

**(A)** threats of serious harm to or physical restraint against any person;

**(B)** any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or

**(C)** the abuse or threatened abuse of law or the legal process.

**(3)** The term "commercial sex act" means any sex act, on account of which anything of value is given to or received by any person.

**(4)** The term "participation in a venture" means knowingly assisting, supporting, or facilitating a violation of subsection (a)(1).

**(5)** The term "serious harm" means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the

surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm.

**(6)** The term "venture" means any group of two or more individuals associated in fact, whether or not a legal entity.

18 USCA § 1591

51. Additionally, 18 USCA § 1595. Civil remedy states as follows:

**(a)** An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

**(b)(1)** Any civil action filed under subsection (a) shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim.

**(2)** In this subsection, a "criminal action" includes investigation and prosecution and is pending until final adjudication in the trial court.

**(c)** No action may be maintained under subsection (a) unless it is commenced not later than the later of--

**(1)** 10 years after the cause of action arose; or

**(2)** 10 years after the victim reaches 18 years of age, if the victim was a minor at the time of the alleged offense.

52. Broad, expansive language is employed in Trafficking Victims Protection Act (TVPA) and its remedial provision, which permits civil actions for damages under TVPA. Noble v Weinstein, 335 F Supp 3d 504 [SDNY 2018], mot to certify appeal denied, 17-CV-09260 (AJN), 2019 WL 3940125 [SDNY Aug. 5, 2019]

53. Defendants subjected Plaintiff to commercial sex acts by force, coercion and that Plaintiff was under the age of 18, including both physical and financial.

54. GRINDR engaged "in ***reckless disregard of the fact, that*** means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that ***the person has not attained the age of 18 years*** and will be caused to engage in a commercial sex act, will be punished as provided in subsection (b)." 18 USC 1591 (emphasis added)

55. A commercial sex act means any sex act, on account of which anything of value is given to or received by any person. The specific conditions are the use of force, fraud, or coercion, or conduct involving persons under the age of 18. See the Department of Justice's definition:. "Section 1591 criminalizes sex trafficking, which is defined as causing a person to engage in a commercial sex act under certain statutorily enumerated conditions. A commercial sex act means any sex act, on account of which anything of value is given to or received by any person. The specific conditions are the use of force, fraud, or coercion, or conduct involving persons under the age of 18." [15]

56. Defendant GRNDR violated Section 1591 by knowingly benefitting financially from participation in a venture which has engaged in an act described in violation of paragraph (1),

57. Defendant GRINDR further engaged in advertising on its app and website "in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b)."

58. Defendants, through their above actions and nonfeasance, furthered the sex trafficking venture. Such conduct was undertaken with the knowledge, or in reckless disregard of the fact, that it was furthering the herein sex trafficking venture. See *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D. N.Y. 2018)

59. All Defendants are liable to Plaintiff under 18 USCA § 1591 and 1595.

---

[15] https://www.justice.gov/crt/involuntary-servitude-forced-labor-and-sex-trafficking-statutesenforced

**SECOND CAUSE OF ACTION**
**The Racketeer Influenced and Corrupt Organizations Act ("RICO")**
**(As against all Defendants)**

60. Plaintiff realleges and incorporates herein by reference each and every foregoing paragraph of this Complaint as if set forth in full.

61. At all relevant times, Plaintiff is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

62. At all relevant times, each Defendant is a person within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

63. 18 U.S.C. § 1962. Section 1962(c) of the act renders it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Congress passed RICO in 1970 with the broad aim of eradicating organized crime and corrupt business activity, proclaiming the statute's provisions "shall be liberally construed to effectuate its remedial purposes." Organized Crime Control Act of 1970, Pub. L. No. 91–452, § 904(a), 84 Stat. 922, 947 (1970); *see also, e.g.*, *Boyle v. United States*, 556 U.S. 938, 944, 129 S.Ct. 2237, 173 L.Ed.2d 1265 (2009); *United States v. Turkette*, 452 U.S. 576, 587, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981).

64. At all times material, Defendants were not only perpetrators under RICO but also conspirators under RICO. Those who conspire to violate RICO also fall within the statute's broad purview. 18 U.S.C. § 1962(d). And the statute provides civil remedies to "[a]ny person injured in [her] business or property by reason of" the enterprise's racketeering activities, permitting the

recovery of treble damages and attorneys fees. 18 U.S.C. § 1964(c). <u>Kruse v. Repp</u>, No. 419CV00106SMRSBJ, 2020 WL 1317479, at *16 (S.D. Iowa Mar. 20, 2020)

65. To state a claim under § 1962(c), Plaintiff must plead facts that, if proven, demonstrate "(1) the conduct (2) of an enterprise (3) through a pattern of racketeering activity." *Salinas v. United States*, 522 U.S. 52, 62, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). <u>Kruse v. Repp</u>, No. 419CV00106SMRSBJ, 2020 WL 1317479, at *16 (S.D. Iowa Mar. 20, 2020)

66. At all times material, Defendants were an enterprise under RICO.

67. At all relevant times, the enterprise was engaged in, and its activities affected interstate and foreign commerce within the meaning of 18 U.S.C. § 1962(c).

68. At all times material, Defendants GRINDR, LLC, KL GRINDR HOLDINGS, INC., and GRINDR HOLDING COMPANY are each a "legal entity" and therefore an "enterprise under the RICO Act. A RICO "enterprise" is the vehicle through which a defendant conducts an unlawful pattern of racketeering activity, *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 259, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994), and is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961(4); *see also Turkette*, 452 U.S. at 581–82, 101 S.Ct. 2524 (describing two categories of enterprises: "legal entities" and associations). But "[t]he 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583, 101 S.Ct. 2524. Rather: The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the

participants in the enterprise. Kruse v. Repp, No. 419CV00106SMRSBJ, 2020 WL 1317479, at *16–17 (S.D. Iowa Mar. 20, 2020). The ultimate inquiry is "whether the enterprise encompasses more than what is necessary to commit the predicate RICO offense." *Diamonds Plus, Inc. v. Kolber*, 960 F.2d 765, 770 (8th Cir. 1992). Thus, to state a claim under § 1962(c), a complaint must allege the existence of an enterprise that "would still exist were the predicate acts removed from the equation." *Crest Const. II*, 660 F.3d at 354–55 (quoting *Handeen*, 112 F.3d at 1352). Kruse v. Repp, No. 419CV00106SMRSBJ, 2020 WL 1317479, at *17 (S.D. Iowa Mar. 20, 2020) "Legal entities are garden-variety 'enterprises' which generally pose no problem of separateness from the predicate acts." *Bennett v. Berg*, 685 F.2d 1053, 1060 (8th Cir. 1982); *see also id.* ("An enterprise is particularly likely to be found where ... the enterprise alleged is a legal entity rather than an 'associational enterprise.' "). Kruse v. Repp, No. 419CV00106SMRSBJ, 2020 WL 1317479, at *17 (S.D. Iowa Mar. 20, 2020).

69. At all times material DEFENDANT AARON WEINREB and Defendants GRINDR, LLC, KL GRINDR HOLDINGS, INC., and GRINDR HOLDING COMPANY were an enterprise in that they were a "group of individuals associated in fact." An association-in-fact enterprise consists of "a group of persons associated together for a common purpose of engaging in a course of conduct" and is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Boyle*, 556 U.S. at 944–45, 129 S.Ct. 2237 (quoting *Turkette*, 452 U.S. at 580, 583, 101 S.Ct. 2524). Though § 1961(4) "does not specifically define the outer boundaries of the 'enterprise' concept," the idea behind an enterprise comprised of "any union or group of individuals associated in fact" is quite "obviously broad": "The term 'any' ensures that the definition has a wide reach, and the very concept of an association in fact is expansive." *Id.* at 944, 129 S.Ct. 2237 (citation omitted).

At its core, "an association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Id.* at 948, 129 S.Ct. 2237.  Kruse v. Repp, No. 419CV00106SMRSBJ, 2020 WL 1317479, at *17 (S.D. Iowa Mar. 20, 2020) The requisite structural features of an actionable association-in-fact enterprise, *See Boyle*, 556 U.S. at 945–46, 129 S.Ct. 2237, "In the sense relevant here, 'structure' means '[t]he way in which parts are arranged or put together to form a whole' and '[t]he interrelation or arrangement of parts in a complex entity.' " (citing American Heritage Dictionary 1718 (4th ed. 2000))). The first of these, a common *purpose.* Kruse v. Repp, No. 419CV00106SMRSBJ, 2020 WL 1317479, at *18 (S.D. Iowa Mar. 20, 2020). The second structural feature, *relationships among those associated with the enterprise*, Kruse v. Repp, No. 419CV00106SMRSBJ, 2020 WL 1317479, at *18 (S.D. Iowa Mar. 20, 2020). The enterprise's *longevity*, the third structural characteristic of an association-in-fact enterprise. Kruse v. Repp, No. 419CV00106SMRSBJ, 2020 WL 1317479, at *18 (S.D. Iowa Mar. 20, 2020)

70. At all times material the Defendants had a common purpose of connecting with underage males for sex. There exists relationships among these Defendants, and there exists longevity in their "enterprise."

71. At all times material Defendants engaged in a pattern of racketeering activity under RICO.  A " 'pattern of racketeering activity' requires at least two acts of racketeering activity," with the last occurring within ten years of another prior act. 18 U.S.C. § 1961(5). Congress has defined "racketeering activity" to include a panoply of federal and state crimes. *See id.* § 1961(1). Civil liability does not hinge on a RICO defendant's conviction of the predicate acts forming the basis of a racketeering allegation. *Sedima*, 473 U.S. at 493, 105 S.Ct. 3275. The "pattern" requirement is quite flexible, too. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 238–39, 109

S.Ct. 2893, 106 L.Ed.2d 195 (1989). <u>Kruse v. Repp</u>, No. 419CV00106SMRSBJ, 2020 WL

1317479, at *20 (S.D. Iowa Mar. 20, 2020).

72. The Defendants' pattern of racketeering activity is demonstrated by the following crimes as

stated above and as covered under 18 U.S.C. 1961(1):


- Section 1591 relating to sex acts committed against Plaintiff as covered by section 1591.

- 18 USCA § 1595. (**a**) An individual who is a victim of a violation of this chapter may bring
  a civil action against the perpetrator (or whoever knowingly benefits, financially or by
  receiving anything of value from participation in a venture which that person knew or
  should have known has engaged in an act in violation of this chapter) in an appropriate
  district court of the United States and may recover damages and reasonable attorneys fees.

73. Defendant GRINDR knew or should have known that it was receiving money and other

value, including advertising revenue, from having underage males as its subscribers who

were having illegal sex with adult males in violation of 18 USCA Sec. 1595 and 1591.

74. Defendant GRINDR failed to institute age verification procedures when it knew or should have

known that it was receiving money and other value from having underage males as its

subscribers who were having illegal sex with adult males in violation of 18 USCA Sec. 1595

and 1591.

75. All of the above predicate acts are related and amount to or pose a threat of continued criminal

activity. A RICO plaintiff must plead facts that "show that the racketeering predicates are

related, <u>*and*</u> that they amount to or pose a threat of continued criminal activity," evidencing

some "continuity plus relationship which combines to produce a pattern." *H.J. Inc.*, 492 U.S.

at 239, 109 S.Ct. 2893 (emphasis omitted) (second quote citing 116 Cong. Rec. 18940 (1970)

(Sen. McClellan)). "Prohibited activities are related if they 'have the same or similar purposes,

results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Handeen*, 112 F.3d at 1353 (quoting *H.J. Inc.*, 492 U.S. at 240, 109 S.Ct. 2893). Much like establishing an association-in-fact enterprise, "these two constituents of RICO's pattern requirement must be stated separately, though in practice their proof will often overlap." *H.J. Inc.*, 492 U.S. at 239, 109 S.Ct. 2893. Kruse v. Repp, No. 419CV00106SMRSBJ, 2020 WL 1317479, at *22 (S.D. Iowa Mar. 20, 2020)

76. The above illegals activities also amount to or pose a threat of continued criminal activity, "Continuity" is both close-ended and open-ended, the former "referring either to a closed period of repeated conduct" and the latter demonstrated by "past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. 2893. To plead close-ended continuity, a plaintiff in this circuit must state facts that establish "related acts continuing over a period of time lasting at least one year." *Crest Const. II*, 660 F.3d at 357 (citing citation omitted); *see H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. 2893 (requiring "a series of related predicates extending over a substantial period of time"). Alternatively, a plaintiff must plead open-ended continuity by showing that "the related predicates themselves involve a distinct threat of long-term racketeering activity, either implicit or explicit." *H.J. Inc.*, 492 U.S. at 242, 109 S.Ct. 2893. But "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.* Ultimately, whether the predicates alleged demonstrate a threat of continued racketeering activity "depends on the specific facts of each case." *Id.* Kruse v. Repp, No. 419CV00106SMRSBJ, 2020 WL 1317479, at *22 (S.D. Iowa Mar. 20, 2020). The above illegal acts occurred over a period of time lasting

at least one year. The above illegal activities also involve a direct threat of long-term racketeering activity.

77. Defendants are also liable under a RICO conspiracy. Section 1962(d) makes it unlawful for any person to conspire to violate RICO's substantive provisions. To state an actionable RICO conspiracy, a plaintiff must plead facts that show (a) "an enterprise existed"; (b) "the enterprise affected interstate or foreign commerce"; (c) "the defendant associated with the enterprise"; and (d) "the defendant 'objectively manifested an agreement to participate ... in the affairs of [the] enterprise.' " *Aguilar v. PNC Bank, N.A.*, 853 F.3d 390, 402 (8th Cir. 2017) (alterations in original) (quoting *United States v. Darden*, 70 F.3d 1507, 1518 (8th Cir. 1995)). In accordance with general conspiracy principles, and contrary to the Bank Defendants' position, there is no requirement that any one conspirator itself agree to commit a predicate act in furtherance of the conspiracy because, "so long as they share a common purpose, conspirators are liable for the acts of their co-conspirators." *Salinas*, 522 U.S. at 64, 118 S.Ct. 469; *see also id.* at 65, 118 S.Ct. 469 ("The interplay between [§ 1962] subsections (c) and (d) does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense."). Thus, a RICO conspirator must simply "intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." *Id.* at 65, 118 S.Ct. 469. To that end, "[a] conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense" so long as "[t]he partners in the criminal plan ... agree to pursue the same criminal objective." *Id.* at 63, 118 S.Ct. 469; *see also United States v. Kragness*, 830 F.2d 842, 860 (8th Cir. 1987) ("RICO conspiracy law, like

traditional conspiracy law, requires only that each defendant agree to join the conspiracy ....").
A civil RICO plaintiff "need only establish a tacit understanding between the parties, and this
may be shown wholly through the circumstantial evidence of [each defendant's] actions"; proof
of an express agreement is not required. *Aguilar*, 853 F.3d at 402 (alteration in original)
(citation omitted). But pleading a RICO conspiracy requires more than stating facts showing
the defendant merely associated with co-conspirators, knew about the conspiracy, and was
present during conspiratorial discussions. *Rosemann v. St. Louis Bank*, 858 F.3d 488, 500 (8th
Cir. 2017). Rather, a plaintiff must demonstrate "that the defendant was aware of the scope of
the enterprise and intended to participate in it." *Aguilar*, 853 F.3d at 402 (citation omitted).
Kruse v. Repp, No. 419CV00106SMRSBJ, 2020 WL 1317479, at *24–25 (S.D. Iowa Mar. 20,
2020) An enterprise existed among Defendants. The enterprise affected interstate or foreign
commerce. The Defendants associated with the enterprise, and the Defendant objectively
manifested an agreement to participate ... in the affairs of the enterprise.

78. Plaintiff has RICO standing. RICO provides civil remedies to "[a]ny person injured in [her]
business or property" by reason of the statute's substantive provisions to sue for treble damages
caused by the enterprise's racketeering activities. 18 U.S.C. § 1964(c). But a plaintiff
has standing to bring a civil RICO claim "if, and can only recover to the extent that, [s]he has
been injured in [her] business or property by the conduct constituting the violation." *Sedima*,
473 U.S. at 496, 105 S.Ct. 3275; *accord Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660
(8th Cir. 2012) ("To have standing to make a RICO claim, a party must have 1) sustained an
injury to business or property 2) that was caused by a RICO violation." (citation omitted)). The
alleged RICO violation must be the proximate cause of the plaintiff's injury, that is, there must
be "some direct relation between the injury asserted and the injurious conduct

alleged." *Holmes v. Sec. Inv. Protection Corp.*, 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). To maintain a civil RICO conspiracy claim, moreover, a plaintiff's injury must derive from an act made unlawful under the statute itself: As at common law, a civil conspiracy plaintiff cannot bring suit under RICO based on injury caused by *any* act in furtherance of a conspiracy that might have caused the plaintiff injury. Rather, consistency with the common law requires that a RICO conspiracy plaintiff allege injury from an act that is analogous to an 'ac[t] of a tortious character,' meaning an act that is independently wrongful under RICO. Kruse v. Repp, No. 419CV00106SMRSBJ, 2020 WL 1317479, at *26 (S.D. Iowa Mar. 20, 2020).

79. The Defendants violations of, among others, Sex Acts By Force (18 USC 1591) directly caused economic injury to Plaintiff. These violations specifically targeted the Plaintiff. Plaintiff was the actual target of these illegal activities and thus has proper standing.

80. Plaintiff has incurred attorneys fees, healthcare provider fees, and other economic loss as a result.

81. Accordingly, Plaintiff has been damaged in an amount to be determined at the time of trial for all available damages under RICO.

**THIRD CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER STATE LAW**
**(As against Defendant GRINDR)**

82. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

83. New York Executive Law § 296 (2)(a) provides that "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation, resort or amusement, because of the race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability or marital status of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof, including the extension of credit, or, directly or indirectly, to publish, circulate, issue, display, post or mail any written or printed communication, notice or advertisement, to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex, disability or marital status, or that the patronage or custom thereat of any person of or purporting to be of any particular race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex or marital status, or having a disability is unwelcome, objectionable or not acceptable, desired or solicited. Executive Law § 296.

84. The term "place of public accommodation, resort or amusement" shall include . . . establishments dealing with goods or services of any kind Executive Law § 292.

85. Defendant GRINDR is a place of public accommodation under Executive Law 296.

86. Defendant GRINDR discriminated against Plaintiff by allowing him to be sexually assaulted on the basis of sex and sexual orientation.

87. Plaintiff hereby makes a claim against Defendant GRINDR under all of the applicable paragraphs of Executive Law Section 296.


**AS A FOURTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER STATE LAW**
**(As against all Defendants)**


88. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

89. New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

90. Defendants GRINDR and WEINREB engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding, abetting, inciting, compelling and coercing the discriminatory conduct.

**AS A FIFTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER**
**THE NEW YORK CITY ADMINISTRATIVE CODE**
**(As against Defendant GRINDR)**

91. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

92. The Administrative Code of City of NY § 8-107 states in relevant part, "4. Public accommodations. a. It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: 1. Because of any person's actual or perceived race, creed, color, national origin, age, gender, disability, marital status, partnership status, sexual orientation, uniformed service or immigration or citizenship status, directly or indirectly: (a) To refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation." New York City, N.Y., Code § 8-107, New York City, N.Y., Code § 8-107

93. The term "place or provider of public accommodation" includes providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind. New York City, N.Y., Code § 8-102, New York City, N.Y., Code § 8-102

94. Defendant GRINDR is a place of public accommodation under the Administrative Code of City of NY § 8-107.

95. Defendant GRINDR discriminated against Plaintiff by allowing him to be sexually assaulted on the basis of sex and sexual orientation.

96. Plaintiff hereby makes a claim against Defendant GRINDR under all of the applicable paragraphs of the Administrative Code of City of NY Title 8.

## AS A SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER
## THE NEW YORK CITY ADMINISTRATIVE CODE
## (As against Defendant GRINDR)

97. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

98. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

99. Defendant GRINDR engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

## AS A SEVENTH CAUSE OF ACTION FOR
## ASSAULT AND BATTERY
## (As against Defendant Aaron Weinreb)

100. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

101. That the aforesaid occurrences and resultant injuries to Plaintiff were caused by reason of the intent, carelessness and recklessness of the individual Defendant WEINREB, his agents,

servants and/or employees, suddenly and without provocation did physically assault and batter Plaintiff herein and did cause unwelcomed contact, causing the Plaintiff to sustain damages; in that the individual Defendant WEINREB did conduct himself in a wanton, willful, reckless and heedless manner without regard for safety of the Plaintiff herein; in that said Defendant WEINREB was physically abusive; in behaving in a disorderly manner; in using unnecessary, excessive and unlawful touching against the Plaintiff; and willfully and maliciously assaulting the Plaintiff herein.

102. Plaintiff was damaged thereby.

## AS AN EIGHTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (As against Defendant Aaron Weinreb)

103. Plaintiff repeats and realleges each and every allegation made in the complaint as if they were set forth herein fully at length.

104. Defendant WEINREB's behavior was extreme and outrageous to such extent that the action was atrocious and intolerable in a civilized society.

105. Defendant WEINREB's conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

106. Defendant WEINREB caused Plaintiff to fear for Plaintiff's own safety.

107. Defendant WEINREB's breach of his duties to Plaintiff caused Plaintiff to suffer numerous injuries as set forth herein.

108. As a result of Defendant WEINREB's acts, Plaintiff has been damaged in an amount to be determined at the time of trial.

## AS A NINTH CAUSE OF ACTION UNDER STATE LAW § 213-C
## BY VICTIM OF CONDUCT CONSTITUTING CERTAIN SEXUAL OFFENSES
## AGGRAVATED SEXUAL ABUSE IN THE FIRST DEGREE
(As against Defendant Aaron Weinreb)

109. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

110. § 130.35 of the New York State Penal Law provides as follows: Rape in the first degree 1 A person is guilty of rape in the first degree when he or she engages in sexual intercourse with another person: 1. By forcible compulsion; or 2. Who is incapable of consent by reason of being physically helpless; or 3. Who is less than eleven years old; or 4. Who is less than thirteen years old and the actor is eighteen years old or more. NY CLS Penal § 130.35

111. § 130.50 of the New York State Penal Law provides as follows: Criminal sexual act in the first degree 1 A person is guilty of criminal sexual act in the first degree when he or she engages in oral sexual conduct or anal sexual conduct with another person: 1. By forcible compulsion; or 2. Who is incapable of consent by reason of being physically helpless; or 3. Who is less than eleven years old; or 4. Who is less than thirteen years old and the actor is eighteen years old or more. NY CLS Penal § 130.50.

112. Section 130.70 of the New York State Penal Law; "Aggravated sexual abuse in the first degree" provides that "A person is guilty of aggravated sexual abuse in the first degree when he inserts a foreign object in the vagina, urethra, penis or rectum of another person causing physical injury to such person:

(1) By forcible compulsion; or

(2) Who is incapable of consent by reason of being physically helpless;  . .

Aggravated sexual abuse in the first degree is a class B felony."

113. Defendant WEINREB violated the herein sections as set forth herein.

114. § 213-c of the Civil Practice Law and Rules provides as follows: Action by victim of conduct constituting certain sexual offenses: Notwithstanding any other limitation set forth in this article, a civil claim or cause of action to recover from a defendant as hereinafter defined, for physical, psychological or other injury or condition suffered by a person as a result of acts by such defendant of rape in the first degree as defined in section 130.35 of the penal law, or criminal sexual act in the first degree as defined in section 130.50 of the penal law, or aggravated sexual abuse in the first degree as defined in section 130.70 of the penal law, or course of sexual conduct against a child in the first degree as defined in section 130.75 of the penal law may be brought within five years. As used in this section, the term "defendant" shall mean only a person who commits the acts described in this section or who, in a criminal proceeding, could be charged with criminal liability for the commission of such acts pursuant to section 20.00 of the penal law and shall not apply to any related civil claim or cause of action arising from such acts. Nothing in this section shall be construed to require that a criminal charge be brought or a criminal conviction be obtained as a condition of bringing a civil cause of action or receiving a civil judgment pursuant to this section or be construed to require that any of the rules governing a criminal proceeding be applicable to any such civil action. NY CLS CPLR § 213-c. Defendant is civilly liable under § 213-c for violating all of the above Sections of the New York State Penal Law as described above.

115. Defendant WEINREB violated the above law as set forth herein.

## AS A TENTH  CAUSE OF ACTION
### NEGLIGENCE
### (As against all Defendant GRINDR)

116. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

117. Defendant GRINDR had a duty to Plaintiff to exercise reasonable care in the designing, manufacturing, researching, coding, development, promoting, and distribution of its apps and other software into the stream of commerce, including a duty to assure that children would not have access to their sex platform.

118. In addition to having the above duty, Defendant GRINDR voluntarily undertook the duty to represent to the public that children are not able to use their platform. They breached that duty in misrepresenting that children are unable to use their platform.

119. Defendant GRINDR was further negligent in stating that children may not use their platform when children were, in fact, able to do so and have done so.

120. Defendant GRINDR negligently failed to comply with its own written policies that children are unable to use their service as stated in its Terms of Service.

121. Defendant GRINDR negligently failed to warn Plaintiff and/or Plaintiff's parents that users of GRINDR frequently use its site to sexually assault children.

122. As a direct and proximate cause of Defendant GRINDR's negligence, Plaintiff was sexually assaulted and raped.

## AS AN ELEVENTH  CAUSE OF ACTION
## PUNITIVE DAMAGES

123. At all times mentioned herein, Defendants' conduct was wanton, reckless, intentional, malicious, and/or grossly negligent and as such punitive damages are warranted against all defendants.

124. Saponaro v Grindr, LLC, 93 F Supp 3d 319 [DNJ 2015] is inapplicable to these facts as the opinion did not focus on *access* or *failure to warn* or *18 USC 1591*, but, instead, focused on content. Additionally, the Plaintiff in that case was suing for damages he sustained because he thought a 13 year old child with whom he had sex, was an adult. It was not a case brought by the minor who was raped. There was also no argument as to misrepresentation made therein. To the extent *Saponaro* is negative case law in any way vis-à-vis this case, *Saponaro* was an erroneous lower court decision, is not controlling law, and any other court should decline to follow that case.

## JURY DEMAND

Plaintiff request a jury trial on all issues to be tried.

WHEREFORE, Plaintiff demands judgment against Defendants, jointly and severally in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated:  New York, New York
        August 16, 2021

Yours, etc.,

DEREK SMITH LAW GROUP, PLLC

By: _____
        Derek T Smith, Esq.
        *Attorneys for Plaintiff*
        One Penn Plaza, Suite 4905
        New York, NY 10119
        (212) 587-0760