1

```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
   - - - - - - - - - - - - - - X

   JOHN DOE,                    :    21-CV-4589(AMD)
                                :
           Plaintiff,            :    U.S. Courthouse
                                :    Brooklyn, New York
                                :
        -against-                :    TRANSCRIPT OF
                                :    PREMOTION CONFERENCE
                                :
                                :
                                :    October 25, 2021
   GRINDR, LLC, ET AL,           :    12:00 p.m.
                                :
           Defendants.           :
   - - - - - - - - - - - - - - X

BEFORE:
              HONORABLE ANN M. DONNELLY, U.S.D.J.

APPEARANCES:

For the Plaintiff:      DANIEL KIRSCHBAUM, ESQ.


For the Defendants:     AMBIKA KUMAR, ESQ.
                        GEOFFREY BROUNELL, ESQ.




Court Reporter:    Holly Driscoll, CSR, FCRR
                   Chief Court Reporter
                   225 Cadman Plaza East
                   Brooklyn, New York 11201
                   (718) 613-2274



Proceedings recorded by mechanical stenography, transcript
produced by Computer-Assisted Transcript.
```

1          (THE FOLLOWING TAKES PLACE VIA TELEPHONE:)
2          THE COURT: Good afternoon, it's Judge Donnelly.
3          Ms. Greene, will you call the case please.
4          THE COURTROOM DEPUTY: Yes. This is civil cause for
5  a premotion conference, docket number, 21-CV-4589, Doe versus
6  Grindr, LLC, et al.
7          Before asking the parties to state their appearance
8  I would like to note the following:
9          Persons granted remote access to proceedings are
10 reminded of the general prohibition against photographing,
11 recording and rebroadcasting of court proceedings. Violation
12 of these prohibitions may result in sanctions including
13 removal of court issued media credentials, restricted entry to
14 future hearings, denial of entry to future hearings or any
15 other sanctions deemed necessary by the Court.
16         Would the parties please state your appearances,
17 plaintiff first.
18         MR. KIRSCHBAUM: Daniel Kirschbaum of the Derek
19 Smith Law Group on behalf of plaintiff.
20         THE COURT: Good afternoon.
21         MS. KUMAR: Ambika Kumar from Davis Wright Tremaine,
22 counsel for the Grindr defendants.
23         THE COURT: Good afternoon.
24         MR. BROUNELL: And, Your Honor, you also have
25 Geoffrey Brounell on behalf of the Grindr defendants.

1 THE COURT: Okay, great. Good afternoon.

2 MR. BROUNELL: Good afternoon.

3 THE COURT: So, just because we are on the telephone
4 I want to remind everybody if you could just put your name on
5 the record before you speak, it makes it so much easier for
6 the court reporter.

7 So, this is a premotion conference on an anticipated
8 motion to dismiss the complaint. I just noticed on ECF it
9 looks like the defendant Weinreb was just served; is that
10 correct?

11 MR. KIRSCHBAUM: That's slightly off, Your Honor. I
12 apologize, I was trying to find the paperwork to prove he was
13 served.

14 THE COURT: Mr. Kirschbaum?

15 MR. KIRSCHBAUM: It is, I'm sorry, Daniel Kirschbaum
16 for plaintiffs. This is not -- I guess my bad in not getting
17 the paperwork sooner, I wanted to get it on the docket as soon
18 as I had it, but he was apparently served near the end of
19 September.

20 THE COURT: I see. Okay.

21 MR. KIRSCHBAUM: This is my first case with a
22 defendant served while he's in a detention facility so I
23 wasn't sure how to go about doing it.

24 THE COURT: Well, it doesn't sound like there's been
25 any appearance on his behalf yet.

4

1         MR. KIRSCHBAUM:  No.

2         THE COURT:  That's just a little housekeeping
3 matter, okay.  And then I noticed that the defendants in the
4 letter have a footnote about the names of the defendants,
5 Grindr Holding Company and KL Grindr Holdings, those are
6 apparently the wrong names; is that right, and I'm putting
7 that to the defendants?

8         MS. KUMAR:  Well, Your Honor, Ambika Kumar, without
9 talking about who is the right party, the point of that
10 footnote is those two entities do not exist so they can't be
11 sued.

12         THE COURT:  But does Grindr, LLC exist?

13         MS. KUMAR:  Yes, the remaining -- yes, that's
14 right.

15         THE COURT:  Okay.  I just wanted to straighten
16 that out.  All right.

17         So, let me just first ask you, Mr. Kirschbaum,
18 is there anything that was raised in the defendants'
19 arguments that makes you think you want to try to amend
20 your complaint?

21         MR. KIRSCHBAUM:  I suspect I would.  I mean,
22 frankly, I'd prefer to hear their full motion papers before I
23 go about doing that since obviously, it's nobody's fault, but
24 the three-page limit on premotion letters necessarily means
25 we're all very terse and summary in our submissions.

1    THE COURT:  Well, okay.  The reason I ask is rather
2  than put everybody through briefing it and writing a decision,
3  I just wondered if we could cut to the chase but let's see if
4  we can talk about a couple of things here.
5    I think I have to say I think you've got a pretty
6  big obstacle here with Section 230 and also, I mean it's a
7  summary order but the Circuit's decision, the recent decision,
8  is it Harrington -- *Herrick*; *Herrick* seems to be almost
9  exactly the same kind of complaint and Judge Caproni dismissed
10 it and it seems to me that it's saying almost exactly the same
11 thing.
12   In *Herrick* the plaintiff was claiming that Grindr
13 permitted something bad to happen which was the ex-boyfriend
14 making fake profiles or something like that, and the complaint
15 here seems to be pretty much the same thing, that Grindr
16 permitted underage people to get access to Grindr and it seems
17 to me to be sort of the same thing and so I just wonder maybe,
18 Mr. Kirschbaum, if you could address that.
19   MR. KIRSCHBAUM:  Sure, Your Honor.  I will concede,
20 first of all, it's clear that Section 230 is a big obstacle to
21 anyone trying to sue any website or internet provider and I'm
22 not closely familiar with *Herrick* but, like you summarized, I
23 think the circumstances of that case are roughly similar but
24 the key distinction here is our theory of liability, it's not
25 based on, unlike *Herrick*, the negligent failure of Grindr to

6

1  police the content of its website or to take down offending
2  misleading content, our theory is their willingness to let
3  minors access the site.
4          In other words, we are not -- I realize Section 230
5  largely immunizes Grindr from what its users post but like in
6  any tort scenario there's also the issue of allowing underage
7  children access to something dangerous, I mean it's roughly an
8  electronic equivalent of an attractive nuisance claim.
9          THE COURT:  Well, I think I'm just going to, and
10 maybe this is a failure of imagination on my part, but I think
11 the Circuit said that Grindr's alleged lack of safety
12 features, which is pretty much what *Herrick* was arguing, made
13 it more difficult -- that safety features make it more
14 difficult for the boyfriend to post impersonating profiles.
15 It's basically a manufacture and design defect that the
16 Circuit was talking about and it seems to me that either
17 negligently -- you seem to actually argue at one point that
18 it's purposeful permitting children to get access to Grindr.
19 It seems similar to me and, like I said, I could be wrong
20 but --
21         MR. KIRSCHBAUM:  Do you want my response, Your
22 Honor?
23         THE COURT:  Sure.
24         MR. KIRSCHBAUM:  First of all, I don't think we
25 claim that Grindr was purposefully helping children access the

1  site so much as that it was recklessly failing to prevent them
2  from accessing the site, it's a slight degree of difference in
3  intent.
4        In terms of the *Herrick* case and the safety
5  features, again, that goes to the content posted and their
6  claim was a manufacturing design defect which is, again, a
7  different theory of tort liability than, for example, a child
8  accessing a dangerous situation like the classic negligence
9  attractive nuisance case; in other words, just like in the
10 attractive nuisance claim, the allegation is not that the
11 railroad equipment was malfunctioning or not working
12 correctly, it was, but the idea is that children would be so
13 drawn and tempted to play on the railroad tracks or the
14 railroad turntable that fencing should be put up and barriers
15 should be put up.
16       So, we're not arguing about Grindr's effective use
17 as a tool for consensual adult male sex, we're talking about
18 the fact that children should have been kept away from it and
19 they were not.
20       THE COURT:  Let me hear what the defense has to say
21 about that.  Just do me a favor, if you could speak slowly
22 that would be great.
23       MS. KUMAR:  Sure, this is Ambika Kumar for Grindr; I
24 think, Your Honor, we obviously completely agree that the
25 *Herrick* case and Section 230 more generally is an obstacle to

1  the complaint, we agree the circumstances were pretty similar,
2  and while Mr. Kirschbaum is trying to distinguish them, they
3  are really not distinguishable.  Section 230 was designed to
4  protect decisions about content.  The allegation here is that
5  a minor was able to access content and that content caused him
6  harm and so Section 230 is a bar to the complaint, and setting
7  aside Section 230, we think there are other obstacles to the
8  complaint.  We think the plaintiff has failed to state a claim
9  upon which relief can be granted for other reasons as well.
10 So, we plan to move on both those bases.
11         And one thing Mr. Kirschbaum said was I'd rather see
12 their motion before amending.  Well, respectfully, I think it
13 is pretty clear what we're going to argue and I don't think it
14 is fair for Grindr to have to go through the drafting of a
15 motion only to find that there's going to be an amendment.  It
16 would be far more efficient for them to amend if they're going
17 to amend.  That's not to say they can't ask for leave to amend
18 but we certainly want one round of briefing rather than a
19 brief to be filed and then amendment and then another brief to
20 be filed.
21         THE COURT:  Well, let me ask you this, what steps
22 does Grindr have in place to keep underage people from getting
23 access to the website?
24         MS. KUMAR:  Well, I'll be honest, Your Honor, I
25 don't have all of those facts in my knowledge.  I can tell you

1 that our terms of service say that no child may use Grindr.
2 You know, the plaintiff says that means that they physically
3 can't use Grindr but that's not the case, it means children
4 are prohibited from using Grindr. What I don't know is what
5 other protections are in place, I'm sure there are some but
6 I'm not prepared to tell you what those are now.
7         THE COURT: Okay. The other question I have for
8 Mr. Kirschbaum, the TVPA claim, there's no allegation that
9 there was a commercial sex act and I think that's a
10 requirement to state a claim under that section.
11         MR. KIRSCHBAUM: That is a correct statement of the
12 law, Your Honor.
13         THE COURT: Are you withdrawing that one then or --
14         MR. KIRSCHBAUM: Well, I respectfully would like to
15 see more -- I would like to see more facts; in other words, we
16 don't have yet all the information about exactly where the
17 line is drawn between what Grindr -- its method of operating,
18 its profit motive or whatever based on its users' commercial
19 sex acts. I mean it is plausible at this stage that there was
20 in fact some commercial activity involved in the use of
21 Grindr, we just don't know, I don't know enough about what
22 Weinreb was doing.
23         THE COURT: I don't think that's what that means. I
24 think it has to be a commercial sex act. It's like the
25 Backpage litigations and that was explicitly what Backpage was

1   doing and you don't make any allegation like that.

2            MR. KIRSCHBAUM:  I'm sorry, I'm not familiar with
3   Backpage.

4            THE COURT:  Well, I think Backpage was the impetus
5   for the amendment to the law because Backpage knowingly
6   trafficked in children and young women and so I don't think
7   that you're going to be able to make out a claim under this.
8   I could be wrong but I will tell you now that what's in the
9   complaint is not sufficient.

10           And I just want to make sure that I understand, I
11  don't think you're claiming that the TVPA covers
12  non-commercial sex acts between adults and minors, are you?

13           MR. KIRSCHBAUM:  No, Your Honor.

14           THE COURT:  Okay.  And then the other question
15  here is this RICO claim and you know RICO is a tough claim
16  to make just because it's got a very high pleading standard
17  and I think, just to put my cards on the table, I don't think
18  the complaint comes close to making out a RICO claim.

19           First, there really aren't two acts of racketeering
20  activity because you're citing two different sections, you're
21  citing Section 1591 and 1595, but 1595 is just the civil
22  remedy for 1591, so it's the same thing, it's kind of double
23  counting, and so I think that's problematic also.  So, I don't
24  know what your thoughts are about that.

25           MR. KIRSCHBAUM:  So, Your Honor, first of all, in

1  terms of commercial activity for the TVPA, and this is Daniel
2  Kirschbaum again; you know, in the Harvey Weinstein case, for
3  example, the court concluded that commercial activity can
4  be -- I'm trying to think of the right word for it -- indirect
5  or subtle.  It's not like it's a cash register transaction
6  necessarily to count as commercial activity.  So, when someone
7  is trafficking in women for the sake of the benefit to someone
8  else and those women are being pressured by indirect career
9  opportunities, for example from the Weinstein case, that
10 suffices to establish commercial activity.
11           So, with that level of flexibility in the law I
12 don't want to say that there's absolutely no commercial
13 activity that can be gleaned here.  I mean I think Grindr
14 profits based on the amount of users and the amount of posts
15 and advertisers are based on the number of people using it, it
16 has an incentive to not police who accesses its site and to
17 allow wider access to the site.  I don't want to say that
18 that's not sufficiently cognizable commercial activity under
19 the TVPA.
20           In terms of RICO --
21           THE COURT:  Is there a case that says that?  Do you
22 have any case that stands for that broad application of the
23 law?
24           MR. KIRSCHBAUM:  The Harvey Weinstein case, Your
25 Honor.  I can find -- if you give me a minute, I can pull up

1  the number.
2         THE COURT: Is that a federal case?
3         MR. KIRSCHBAUM: *Noble v. Weinstein*, 335 F.Supp. 3d
4  504.
5         THE COURT: Right, but I mean I'm weakly familiar
6  with the facts of that case -- well, I won't say it without
7  reading it but it seems a lot different than this. And now
8  we're talking about what you pled in the complaint, so there's
9  just not any facts that make that case out right now.
10        MR. KIRSCHBAUM: Your Honor, I'm not trying to
11 suggest that this case is similar factually to the Weinstein
12 case. All I'm saying is the Weinstein case stands for the
13 proposition that the law is -- the definition of a commercial
14 act as covered by the TVPA is pretty broad.
15        THE COURT: I see, okay.
16        MR. KIRSCHBAUM: In terms of RICO, I would like the
17 opportunity to confirm that but if it really does seem like we
18 have no way of reaching the predicate acts, then I suppose I
19 will file -- refile without it.
20        I do want to address procedurally the defendants'
21 contention that we should not be allowed to amend the
22 complaint after they've moved. That's just simply -- it's not
23 a matter of anyone's choice here, the Federal Rules of Civil
24 Procedure say what they say, the parties (audio drop) pleading
25 as a matter of right within 21 days after service of motion.

THE COURT: Right, you can. I think what they're saying is that -- and that's one of the reasons why we have premotion conferences is to put some of these things out there on the table so that you can amend your complaint before, it's really a little bit more efficient to do that, and so if there are things that are raised by their letter which, I mean I know it is only three pages but I do think it puts the plaintiff on notice of what the claims are going to be and so for that reason I think if you do think that you want to amend, it's just more efficient to do it before we do briefing.

You're thinking that you would amend after you got their full brief, is that what you're saying?

MR. KIRSCHBAUM: Well, yes, that makes it much easier to amend in a complete and effective manner. I mean it is hard to amend without seeing what they're going to say. I'm happy to -- you know, I could imagine a scenario where I amend now and then they still presumably will move to dismiss because under Section 230 every defendant ever moves to dismiss. So, I could see a situation where they move to dismiss after I amended once, I think I would still have the right under the rules to file another amendment or at least I would not want to waive that right. If there's a chance I am going to waive that right by premotion amending, I respectfully will decline to do that. I think that will be

1  shooting myself in the foot or tying a hand behind my back
2  before the fight.
3              THE COURT:  Well, I don't know about that but I
4  think I'm just going to give you a briefing schedule then.
5  Actually I will tell you that in my experience I haven't had
6  people amend just after the brief but if that's what you want
7  to do.
8              All right, let me just -- I'm sorry.
9              MS. KUMAR:  This is Ambika Kumar.  Counsel for
10 plaintiff and I have talked about a briefing schedule, if Your
11 Honor is amenable.
12             THE COURT:  Oh, great.
13             MS. KUMAR:  So, Grindr would file its opening brief
14 by November 3rd, plaintiff would respond by December 3rd, and
15 Grindr would reply by December 17th.
16             THE COURT:  Okay.
17             MS. KUMAR:  I think if they're going to amend after
18 we file our motion, then we'll obviously need to adjust that
19 schedule.
20             THE COURT:  Well, if the plaintiff decides that he
21 wants to amend after you file, I don't think all will be lost,
22 I think some of your arguments will probably stay the same and
23 then what we can do is just withdraw it and refile or
24 something like that, all right.
25             MS. KUMAR:  Yes, that's fine, Your Honor.  If

1 there's a scheduling issue for Mr. Kirschbaum, we can
2 certainly talk about it.  I think it would be a burden on
3 him because if he amends and we file, his response would be
4 viewed (audio drop), I think it's just a matter of -- we've
5 been cooperative, I think we can agree to a schedule as well.
6         MR. KIRSCHBAUM:  This is Daniel, I will say I'm fine
7 with any reasonable briefing schedule, I would not fight with
8 my adversary about that.
9         THE COURT:  I like non-fighting, okay.  All right.
10 Well, let's stick with that one.  If it needs to be adjusted,
11 we can do that, okay.
12         MR. KIRSCHBAUM:  Sound good.
13         MS. KUMAR:  Yes, Your Honor.
14         THE COURT:  Anything else anybody wants to put on
15 the record?
16         MS. KUMAR:  Your Honor, one more issue which is I
17 believe there is a conference scheduled for November in this
18 case and I was going to ask if we could have it adjourned
19 because I think we'll be in the middle of briefing.
20         THE COURT:  Is that with -- who is the magistrate
21 judge, Judge Kuo?
22         MS. KUMAR:  Yes, it is Judge Kuo and there's an
23 initial case conference scheduled for November 16.
24         THE COURT:  Well, I'll touch base with Judge Kuo and
25 just let her know, all right.

16

1   MS. KUMAR:  Okay.
2   THE COURT:  Okay.
3   Anything else?
4   MR. KIRSCHBAUM:  I'm sorry, Your Honor, is this
5   sufficiently on the record or do you want us to file something
6   in writing to state what the briefing schedule will be and so
7   forth?
8   THE COURT:  Not, we'll put it up on ECF, okay.
9   MR. KIRSCHBAUM:  Sounds good.  Thank you, Your
10  Honor.
11  THE COURT:  Okay, great.
12  (Time noted:  12:28 p.m.)
13  (End of proceedings.)