UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
**JOHN DOE,**                        :

              Plaintiff,        :

                         :  **MEMORANDUM DECISION AND**
                             **ORDER**
        - against -         :

**GRINDR, LLC, KL GRINDR HOLDINGS,**     21-CV-4589 (AMD) (PK)
**INC., GRINDR HOLDING COMPANY,** and
**AARON WEINREB,**                    :

              Defendants.      :
-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

On August 16, 2021, the plaintiff sued the defendants Grindr, LLC, KL Grindr Holdings,

Inc., Grindr Holding Company (collectively, "Grindr") and Aaron Weinreb, asserting claims

under the Trafficking Victims Protection Act ("TVPA"), Racketeer Influenced and Corrupt

Organizations Act ("RICO") and New York state law.[1] (ECF No. 1 ¶¶ 48-124.) On December

8, 2021, Weinreb filed a crossclaim against Grindr, alleging that it is responsible for any injury

that the plaintiff suffered. (ECF No. 30 ¶ 29.) Grindr moved to dismiss the complaint on

November 3, 2021 and Weinreb's crossclaim on January 20, 2022. (ECF Nos. 26, 33.) On

December 6, 2021, the plaintiff withdrew his federal claims, acknowledging that he could not

allege the requisite elements. (ECF No. 28.) The parties agree that the claims should be

dismissed; the point of contention is whether the claims should be dismissed with prejudice.

(ECF No. 38.) For the reasons that follow, I dismiss the plaintiff's withdrawn claims without

---

[1] Grindr states that the "[p]laintiff has sued Grindr Holding Company and KL Grindr Holdings, Inc., but
the former does not exist and has never existed, and the latter no longer exists." (ECF No. 19 at 1 n.1.)
The plaintiff responds that "[i]f Grindr provides suitable documentation demonstrating as much,
Plaintiff is willing to withdraw or stipulate to the dismissal of any claims as against these entities."
(ECF No. 28 at 1 n.2.)

prejudice, and decline to exercise supplemental jurisdiction over his remaining state law claims or Weinreb's crossclaim.

## BACKGROUND

"Grindr is a web-based 'hook-up' application ('app') that matches users based on their interests and location." *Herrick v. Grindr LLC*, 765 F. App'x 586, 588 (2d Cir. 2019). Weinreb, a 48-year-old man, used Grindr between May 2019 and October 2019 to meet and have sex with two minors. (ECF No. 1 ¶ 2.) On February 26, 2021, Weinreb pled guilty to Coercion and Enticement to Engage in Criminal Sexual Activity, acknowledging that he knowingly and intentionally persuaded, induced, enticed and coerced an individual to travel in foreign commerce to engage in a Criminal Sexual Act in the Third Degree, in violation of New York Penal Law § 130.40(2) and 8 U.S.C. § 2422(a). *See United States v. Weinreb*, No. 20-CR-6 (E.D.N.Y.). The Honorable Brian M. Cogan sentenced Weinreb to 54 months' imprisonment and 10 years of supervised release, and imposed fines and restitution. *Id.*

On August 16, 2021, the plaintiff filed this action against Grindr and Weinreb, who is incarcerated. (ECF No. 1.) The plaintiff claims that he is one of Weinreb's victims (*id.* ¶ 2), and that Grindr "knowingly facilitates and contributes to sexual abuse, rape and trafficking of minor children for profit" (*id.* ¶ 1), by "fail[ing] to warn underage users and their parents that its sex platform is frequently used by pedophiles and other sexual predators to sexually abuse minor children" (*id.* ¶ 37), and by "intentionally mak[ing] signing up easy for prospective users, including those who are underage." (*Id.* ¶ 47.)

The plaintiff asserted claims under the TVPA and RICO against both Grindr and Weinreb, as well as claims for sex and sexual orientation discrimination under the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"). (*Id.* ¶¶ 48-90.) Against Grindr, he asserted claims for negligence and sex and sexual orientation discrimination under the

New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8–107.  (*Id.* ¶¶ 91-99, 116-22.)  The plaintiff asserted against Weinreb claims for assault and battery and intentional infliction of emotional distress, as well as pursuant to New York Civil Practice Law and Rules, N.Y. C.P.L.R. § 213-C ("Action by victim of conduct constituting certain sexual offenses").  (*Id.* ¶¶ 100-15.)

On September 14, 2021, Grindr requested a pre-motion conference in anticipation of its motion to dismiss the complaint.  (ECF No. 13.)  Grindr argued that the Court should dismiss the plaintiff's TVPA claim because he did not "identify any 'commercial sex act,' facts to suggest Grindr's knowledge, or that Grindr financially benefitted from participating in a venture."  (*Id.* at 2 (citing 18 U.S.C. §§ 1591(a), (e)(3)).)  Grindr also moved to dismiss the RICO claim because of the "fail[ure] to allege a TVPA claim, which is the only predicate act he identifies."  (*Id.*)  Grindr argued that the plaintiff's NYSHRL and NYCHRL claims should be dismissed because "[b]oth laws make it unlawful to refuse, withhold, or deny services of a public accommodation to individuals based on certain criteria," and the plaintiff did "not allege that Grindr refused, withheld, or denied him anything."  (*Id.* at 2-3.)

In addition, Grindr maintained that the plaintiff's claims were barred under Section 230 of the Communications Decency Act of 1996 (the "CDA"), 47 U.S.C. § 230, and *Herrick v. Grindr LLC*, 765 F. App'x 586 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 221 (2019).  Under CDA § 230(c), "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider."  47 U.S.C. § 230(c)(1).  "In applying the statute, courts have broken it down into three component parts, finding that it shields conduct if the defendant [A] is a provider or user of an interactive computer service, [B] the claim is based on information provided by another information content

provider and [C] the claim would treat the defendant as the publisher or speaker of that information." *FTC v. LeadClick Media, LLC*, 838 F.3d 158, 173 (2d Cir. 2016) (alterations and internal quotation marks omitted).  In *Herrick*, the plaintiff's ex-boyfriend created false profiles in which he impersonated the plaintiff, and directed other users to the plaintiff's home and workplace.  Herrick argued that "while the information in a user's Grindr profile may be 'content,' his claims [arose] from Grindr's management of its users, not user content."  765 F. App'x at 590.  Rejecting this distinction, the Court held that Section 230 barred the plaintiff's claims because they were "based on information provided by another information content provider and therefore satisfy the second element of § 230 immunity."  *Id.*

On October 25, 2021, I held a pre-motion conference and discussed the plaintiff's claims and Grindr's arguments in support of dismissal.  At the parties' request, I set a briefing schedule for Grindr's motion to dismiss.

Grindr filed its motion to dismiss the complaint shortly thereafter, on November 3, 2021. (ECF No. 26.)  The plaintiff responded on December 6, 2021, and made the following concessions:

> Upon research and reflection, Grindr's arguments are well taken—at this point. Plaintiff accordingly withdraws his TVPA, RICO, NYSHRL, and NYCHRL claims without prejudice to re-plead them if, in the future, he discovers any (1) cognizable "commercial sex act," (2) Grindr's actual knowledge of, or acts in furtherance of, sex trafficking, (2) injury to Plaintiff's property, (3) cognizable racketeering activity, or (4) discriminatory animus (such as age discrimination).

(ECF No. 28 at 10.)  According to Grindr, the claims should be dismissed with prejudice because they are "futile, and preserving them would prejudice Grindr."  (ECF No. 32 at 2.)  On

4

December 8, 2021, Weinreb filed his answer to the complaint and crossclaim against Grindr. (ECF No. 30.)[2]

In a February 8, 2022 letter, the plaintiff stated that since he "withdrew [his] federal causes of action under RICO and the TVPA as against Grindr," there was no longer "a federal question and there is no diversity of citizenship." (ECF No. 36.) He asked the Court "to advise the parties if the Court will be exercising jurisdiction over the remaining state claims and deciding the motion." (*Id.*) On April 5, 2022, I directed the parties to file a joint status report "advising the Court whether they intend to stipulate to dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii), or if they wish to continue with motion practice." (Apr. 5, 2022 Order.)

In the joint status report, the parties stated that they were "unable to agree to resolution of this issue." (ECF No. 38 at 1.) Grindr "asks the Court to exercise its jurisdiction to decide the fully briefed motions, which, even as to the state-law claims alone, raise important questions of federal law." (*Id.*) The plaintiff contends that dismissal without prejudice is appropriate as he withdrew his TVPA and RICO claims because he "was persuaded by Grindr's arguments that his federal claims were not the strongest." (*Id.*)

## LEGAL STANDARD

"Two lines of authority have developed with respect to the circumstances under which a dismissal without prejudice might be improper." *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006). "One line indicates that such a dismissal would be improper if 'the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit.'" *Id.* (quoting

---

[2] On January 20, 2022, Grindr moved to dismiss Weinreb's crossclaim. (ECF No. 33.) On February 1, 2022, the plaintiff opposed Grindr's motion to dismiss Weinreb's crossclaim. (ECF No. 34.) Grindr filed its reply on February 7, 2022, arguing that the plaintiff's response was effectively an improper sur-reply and that he did not have standing to prosecute Weinreb's crossclaim. (ECF 35.)

*Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 217 (1947)).  "Another line indicates that the

test for dismissal without prejudice involves consideration of various factors, known as the

*Zagano* factors, including (1) the plaintiff's diligence in bringing the motion, (2) any undue

vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the

defendant's efforts and expense in preparation for trial, (4) the duplicative expense of

relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss."  *Id.*

(citing *D'Alto v. Dahon Cal., Inc.*, 100 F.3d 281, 283 (2d Cir. 1996) and *Zagano v. Fordham*

*Univ.*, 900 F.2d 12 (2d Cir. 1990)).  "These factors are not necessarily exhaustive and no one of

them, singly or in combination with another, is dispositive."  *Kwan v. Schlein*, 634 F.3d 224, 230

(2d Cir. 2011).

      "Federal district courts have supplemental jurisdiction over state-law claims 'that are so

related to claims in the action within such original jurisdiction that they form part of the same

case or controversy under Article III of the United States Constitution.'"  *Kolari v. N.Y.-*

*Presbyterian Hosp.*, 455 F.3d 118, 121-22 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(a)).

"[H]owever, this is traditionally 'a doctrine of discretion, not of plaintiff's right.'"  *Id.* (quoting

*United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966)).  28 U.S.C. § 1367(c) "confirms the

discretionary nature of supplemental jurisdiction by enumerating the circumstances in which

district courts can refuse its exercise."  *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156,

173 (1997).  "Of particular relevance here, a district court 'may decline to exercise supplemental

jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'"  *Kolari*, 455

F.3d at 122 (quoting 28 U.S.C. § 1367(c)(3)).

      "Once a district court's discretion is triggered under § 1367(c)(3), it balances the

traditional 'values of judicial economy, convenience, fairness, and comity,' in deciding whether

to exercise jurisdiction." *Id.* (citation omitted) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *see id.* (noting that a district court should "explicitly balance the *Cohill* factors"). Courts are "aided by the Supreme Court's additional guidance in *Cohill* that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Id.* (alteration in original) (quoting *Cohill*, 484 U.S. at 350 n.7); *see also Gibbs*, 383 U.S. at 726 ("[I]f the federal law claims are dismissed before trial . . . the state claims should be dismissed as well.").

## DISCUSSION

The Court considers first whether the claims that the plaintiff voluntarily withdrew—the TVPA, RICO, NYSHRL and NYCHRL claims—should be dismissed with or without prejudice, and then whether the Court should exercise supplemental jurisdiction over the remaining state law claims.

**I.    Dismissal of Withdrawn Claims**

After careful consideration of the *Zagano* factors and the potential prejudice to Grindr, I conclude that the withdrawn claims should be dismissed without prejudice.

Grindr has not demonstrated plain legal prejudice, and accordingly, this line of authority weighs in favor of dismissing the withdrawn claims without prejudice. "'Plain legal prejudice' includes 'the plight of a defendant who is ready to pursue a claim against the plaintiff *in the same action* that the plaintiff is seeking to have dismissed.'" *Ascentive, LLC v. Opinion Corp.*, No. 10-CV-4433, 2012 WL 1569573, at *2 (E.D.N.Y. May 3, 2012) (emphasis in original) (quoting *Camilli*, 436 F.3d at 124). "For example, [the Second] Circuit has explained, 'plain legal prejudice' exists 'when the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief and he would be prejudiced by

being remitted to a separate action.'" *Id.* (quoting *Camilli*, 436 F.3d at 124).  This is not such a

case, and Grindr asserts no counterclaims against the plaintiff or crossclaims against Weinreb.

Moreover, Grindr does not explain how it would be prejudiced by a dismissal without prejudice.

(ECF 38 at 1 (arguing simply that dismissal without prejudice "would prejudice the Grindr

Defendants"); ECF No. 32 at 2 ("[D]ismissal should be with prejudice, as these claims are futile,

and preserving them would prejudice Grindr.").)  Grindr appears to argue that the prejudice is the

"possibility that the plaintiff will reassert the same claims later."  (ECF No. 32 at 3 (quotation

marks and citation omitted).)  However, "the mere prospect of a second lawsuit" is not sufficient

to establish "plain legal prejudice."  *Camilli*, 436 F.3d at 123 (quoting *Cone*, 330 U.S. at 217);

*see also Paulino v. Taylor*, 320 F.R.D. 107, 109 (S.D.N.Y. 2017) ("[S]tarting a litigation all over

again does not constitute legal prejudice." (quoting *D'Alto*, 100 F.3d at 283)); *Empire United

Lines Co. v. Presniakovas*, No. 15-CV-557, 2017 WL 4233032, at *3 (E.D.N.Y. Sept. 22, 2017)

("[D]ismissal under this line of authority would be proper, as Defendants make no argument

about prejudice aside from citing the possibility that they might be subject to a duplicative action

at some point in the future.").

The *Zagano* factors also weigh in favor of dismissing the withdrawn claims without

prejudice.[3]  I evaluate each factor in turn.

a. **Diligence**

In determining whether a plaintiff has been diligent in withdrawing claims, courts "often

consider the length of time an action has been pending and the events that occurred during that

period."  *RQ Innovations, Inc. v. Carson Optical, Inc.*, No. 19-CV-3886, 2021 WL 1075185, at

*3 (E.D.N.Y. Feb. 4, 2021) (collecting cases), *report and recommendation adopted*, No. 19-CV-

---

[3] Although Grindr cites *Zagano*, it does not address the factors and focuses only on the plain legal
prejudice line of authority.

3886, 2021 WL 1062419 (E.D.N.Y. Mar. 18, 2021). "The more appropriate measure of diligence is whether a plaintiff moved to dismiss the complaint without prejudice within a reasonable period after an event that led to its decision not to pursue the action." *Id.*; *see also Hinfin Realty Corp. v. Pittston Co.*, 206 F.R.D. 350, 355-56 (E.D.N.Y. 2008) ("The Court finds that the plaintiffs were diligent in bringing their motion to dismiss the action without prejudice because they filed it immediately after the events that led to their decision not to pursue the action at this time.").

Under either measure, the plaintiff was reasonably diligent in moving to withdraw his claims. This case has been pending since August 16, 2021. (ECF No. 1.) About a month later, on September 14, 2021, Grindr filed a request for a pre-motion conference in anticipation of its motion to dismiss, in which it described the grounds for dismissing the plaintiff's TVPA, RICO, NYSHRL and NYCHRL claims. (ECF No. 13.) At a pre-motion conference on October 25, 2021, I discussed some of those arguments with the parties. A little over a week later, Grindr filed a 23-page motion to dismiss, in which it detailed the reasons for dismissing the plaintiff's TVPA, RICO, NYSHRL and NYCHRL claims. (ECF No. 26-1.) The plaintiff withdrew those claims about a month later. (ECF No. 28.)

Courts have found that plaintiffs acted diligently when they moved to withdraw their claims within a few months of the "relevant events." *See RQ Innovations, Inc.*, No. 19-CV-3886, 2021 WL 1075185, at \*3 (finding that a five-month delay between the relevant event and the plaintiff's request to withdraw claims was not unreasonable); *Stinson v. City Univ. of New York*, No. 18-CV-5963, 2020 WL 2133368, at \*3 (S.D.N.Y. May 4, 2020) (finding that the plaintiff demonstrated diligence in moving to withdraw claims six months after the relevant event); *Am. Fed'n of State, Cnty. & Mun. Emps. Dist. Council 37 Health & Sec. Plan v. Pfizer,*

*Inc.*, No. 12-CV-2237, 2013 WL 2391713, at *3 (S.D.N.Y. June 3, 2013) (finding that the "[p]laintiffs acted diligently" by seeking voluntary dismissal after two months).  Here, the "relevant event" was the filing of Grindr's brief, in which it explained in detail the basis for its motion.

Grindr argues that the plaintiff should have withdrawn his claims after the pre-motion conference—apparently defining the conference as the "relevant event"—before Grindr filed its motion to dismiss.  (ECF No. 32 at 3 (claiming "that the pre-motion letter and the Court's admonitions at the pre-motion conference provided Plaintiff notice of the defects in his claims").)  I disagree.  The fact that I discussed the shortcomings of some of the plaintiff's claims at the pre-motion conference does not mean that the plaintiff was required immediately to withdraw his claims.  The purpose of the pre-motion conference was to discuss the pros and cons of the anticipated motion, not to render a final decision.  Grindr filed its brief shortly after the conference, and the plaintiff withdrew his claims about a month after that.  Under these circumstances, the plaintiff was reasonably diligent.[4]

**b.    Undue Vexatiousness**

The second *Zagano* factor—vexatiousness—weighs in the plaintiff's favor.  "In determining if a plaintiff is vexatious, courts consider whether a plaintiff brought an action 'to harass the defendant' or if the plaintiff has 'ill-motive.'"  *Stinson*, 2020 WL 2133368, at *3 (quoting *Marquez v. Hoffman*, No. 18-CV-7315, 2020 WL 729664, at *3 (S.D.N.Y. Feb. 13, 2020)).  "Courts find ill-motive where, for example, the plaintiff never had any intention of providing discovery in the case but nonetheless permitted the case to proceed; or where the

---

[4] The cases that Grindr cites—*Century Surety Co. v. Vas & Sons Corp.*, No. 17-CV-5392, 2018 WL 4804656 (E.D.N.Y. Sept. 30, 2018) and *Toolasprashad v. Schult*, No. 10-CV-1050, 2011 WL 3157290 (N.D.N.Y. July 26, 2011)—are distinguishable because the plaintiffs in those cases sought to withdraw their claims after a magistrate judge issued a report and recommendation recommending dismissal.

plaintiff filed duplicative actions relating to the same injury; or where the plaintiff assured the court it would proceed with its claims but then goes back on their word and seeks dismissal." *Id.* (alterations omitted) (quoting *Paulino*, 320 F.R.D. at 110). Grindr does not argue that the plaintiff has been vexatious, and there is no evidence that he filed this action to harass Grindr or because of "ill-motive." *See also Jewelers Vigilance Comm., Inc. v. Vitale, Inc.*, No. 90-CV-1476, 1997 WL 582823, at *3 (S.D.N.Y. Sept. 19, 1997) ("The Court disapproves of Plaintiff's litigation tactics in this case. . . . But, absent concrete evidence of any ill-motive on Plaintiff's part, the Court declines to label Plaintiff's conduct 'vexatious.'").

####     c.     Progress of the Action

The third *Zagano* factor—the progress of the case—favors the plaintiff. "Courts applying the *Zagano* factors frequently place the greatest emphasis on the efforts expended by the defendant in discovery and trial preparation and the corresponding prejudice the defendant would suffer if forced to relitigate." *Baldanzi v. WFC Holdings Corp.*, No. 07-CV-9551, 2010 WL 125999, at *4 (S.D.N.Y. Jan. 13, 2010). The parties have not engaged in discovery; the motion to dismiss has been the most significant step in the case. *See Stinson*, 2020 WL 2133368, at *5 ("This suit has not progressed far, and certainly not to the point that courts in this district generally deem too far to grant a voluntary dismissal. Here, only a motion to dismiss has been filed, one that remains pending."). Because the third "*Zagano* factor weighs against dismissal only if the case has progressed to an advanced stage, such as the eve of trial, or when discovery is complete and partial dispositive motions have been adjudicated, this factor does not suggest that dismissal would be prejudicial" for Grindr. *Id.* (alteration, quotation marks and citation omitted).

11

### d.      Duplication of Efforts

The fourth *Zagano* factor—"the potential duplicative expense of relitigation"—weighs in the plaintiff's favor.  Even if the withdrawn claims are relitigated, they "would not be duplicative since [they] [have] barely been litigated at all."  *Catanzano v. Wing*, 277 F.3d 99, 110 (2d Cir. 2001).  As discussed above, this case is at an early stage and, since there has been no discovery, it does not appear that either party has expended significant resources.  *Stinson*, 2020 WL 2133368, at *5.  To be sure, Grindr has expended efforts in researching and drafting the pending motion to dismiss, which resulted in a positive outcome for Grindr—the plaintiff moved to withdraw his claims before the Court rendered its decision.  Counsel for Grindr was well prepared for the October 25, 2022 conference, and had clearly researched the issues beforehand.  Any additional research, including the motion itself, would be valuable should the plaintiff attempt to litigate these claims in another forum.  *Id.* ("[W]hat resources Defendants have thus far expended—in gathering the facts and filing the pending motion to dismiss—will remain of value if Plaintiff's claims are further litigated in [another] [d]istrict."); *see also Jaskot v. Brown*, 167 F.R.D. 372, 374 (S.D.N.Y. 1996) ("To the extent that the claims reappear, the same arguments and facts can be used at that time.").  Grindr has not shown any other duplicative expense.  *See Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*, No. 16-CV-5393, 2018 WL 1115517, at *4 (S.D.N.Y. Feb. 26, 2018) ("Because Defendants have made no showing of duplicative expense regarding the claims Plaintiffs seek to dismiss without prejudice, this factor weighs in Plaintiffs' favor.").  This factor weighs in favor of dismissing the claims without prejudice.

### e.      Adequacy of the Plaintiff's Explanation

The fifth *Zagano* factor—the adequacy of the plaintiff's explanation for withdrawing his claims—favors Grindr slightly.  The plaintiff asserts that he withdrew his TVPA, RICO,

NYSHRL and NYCHRL claims after he reviewed Grindr's brief and its arguments that his allegations were insufficient; he wants to reserve the opportunity to replead the claims if he discovers evidence that supports his claims.  (ECF No. 27 at 9.)  He also concedes that "his federal claims were not the strongest" (ECF No. 38 at 1), and recognizes that he did not—and at this point, cannot—sufficiently plead these claims.  In *Catanzano v. Wing*, the Second Circuit held that the plaintiffs' "explanation[] that they [] brought the motion in order to facilitate an end to the litigation but that they wish[ed] to avoid preclusive effects of the district court's ruling on [their] claim, [was] adequate."  277 F.3d at 100 (holding that by converting its preliminary injunction to a permanent injunction, the district court abused its discretion in denying the plaintiffs' motion to dismiss their claim without prejudice); *see also RQ Innovations, Inc.*, 2021 WL 1075185, at *7 ("[E]ven if Plaintiff's true motivation in seeking dismissal without prejudice is to thwart the preclusive effect of a dismissal with prejudice, that would not in and of itself counsel against granting the motion.").  However, some district courts "have not been persuaded where they believe that the plaintiff seeks dismissal to 'avoid the prospect of an adverse decision on a dispositive motion.'"  *Shaw Fam. Archives, Ltd. v. CMG Worldwide, Inc.*, No. 05-CV-3939, 2008 WL 4127549, at *10 (S.D.N.Y. Sept. 2, 2008) (quoting *Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 569, 572 (S.D.N.Y. 2004)).  It may be that the plaintiff wants to avoid an adverse decision on the pending motion to dismiss.  However, even if this factor favors Grindr, it is only slightly, and does not outweigh the other factors.  Moreover, none of the *Zagano* factors, "singly or in combination with another, is dispositive," *Kwan*, 634 F.3d at 230, and the other factors all weigh heavily in favor of dismissal without prejudice.

Because Grindr would not suffer legal prejudice from a dismissal without prejudice, and because the *Zagano* factors weigh in favor of dismissal, the plaintiff's TVPA, RICO, NYSHRL and NYCHRL claims are dismissed without prejudice.

## II.   Supplemental Jurisdiction Over Remaining State Law Claims

The plaintiff's remaining claims against Grindr are for negligence, and against Weinreb for assault and battery and intentional infliction of emotional distress, as well as pursuant to N.Y. C.P.L.R. § 213-C.  Because I have dismissed the claims over which the Court has original jurisdiction, I have discretion to exercise supplemental jurisdiction over the remaining state law claims.  *See Kolari*, 455 F.3d at 122 (quoting 28 U.S.C. § 1367(c)(3)).  As noted above, the Supreme Court has held that, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Cohill*, 484 U.S. at 350 n.7.  Grindr argues that I should exercise jurisdiction over the remaining state law claims because they "raise important questions of federal law," but does not explain why.  (ECF No. 38 at 1.)  On the contrary, this is the kind of case in which courts typically decline to exercise supplemental jurisdiction.  All federal claims have been eliminated before trial, and the *Cohill* factors counsel against exercising supplemental jurisdiction.  Accordingly, I decline to exercise supplemental jurisdiction over the plaintiff's remaining state law claims, or Weinreb's crossclaim for contribution.

## CONCLUSION

For these reasons, the plaintiff's TVPA, RICO, NYSHRL and NYCHRL claims are dismissed without prejudice.  The Court declines to exercise supplemental jurisdiction over the remaining claims and crossclaim under state law, and dismisses those claims without prejudice. Accordingly, Grindr's motion to dismiss is denied as moot.


**SO ORDERED.**

s/Ann M. Donnelly

_____

ANN M. DONNELLY
United States District Judge


Dated: Brooklyn, New York
          August 5, 2022